362 So.2d 90 (1978)
Ronald M. TAUBER, D.O., Petitioner,
v.
The STATE BOARD OF OSTEOPATHIC MEDICAL EXAMINERS, Respondent.
No. 78-787.
District Court of Appeal of Florida, Fourth District.
August 16, 1978.
Walton B. Hallowes, Jr., of Wells, Gattis & Hallowes, Orlando, for petitioner.
Joseph W. Lawrence II, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, for respondent.
MOORE, Judge.
Petitioner seeks our writ of certiorari directed to the State Board of Osteopathic Medical Examiners (referred to as Board) as a result of the latter's temporary suspension of Petitioner's license to practice osteopathy in the State of Florida. Pursuant to Section 120.60, Florida Statutes (1977), Petitioner received by certified mail a "Notice of Emergency Hearing to Consider Emergency Suspension of License." The notice *91 of hearing was received on March 15, 1978 for a hearing to be conducted on March 17, 1978. The notice contained the charges against the Petitioner and advised him of his right to be represented by counsel, to present testimony, to call and cross-examine witnesses, and to present written evidence for argument. Subsequent to the hearing, at which time the Petitioner appeared personally and through counsel, the Board, on March 23, 1978, issued its order of emergency suspension.
Petitioner's contentions are two-fold: (1) that he was denied procedural due process under statutory requirements and the Constitutions of the United States and the State of Florida, and (2) that the order of emergency suspension of his license failed to demonstrate an immediate danger and necessity as required by Section 120.54(9)(a), Florida Statutes (1977). We will consider each of these contentions separately.
The Florida State Board of Osteopathic Medical Examiners is a state agency authorized by the Florida Legislature to examine and license, including the power to suspend or revoke, osteopathic physicians within the State of Florida. Chapter 459, Florida Statutes (1977). The Florida Administrative Procedure Act, Chapter 120, Florida Statutes (1977), governs the procedural format for the Board's actions concerning the licensing of osteopathic physicians. Section 120.60(5) and (6) provide:
"(5) No revocation, suspension, annulment, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency has given reasonable notice by certified mail or actual service to the licensee of facts or conduct which warrant the intended action and the licensee has been given an opportunity to show that he has complied with all lawful requirements for the retention of the license.
(6) If the agency finds that immediate serious danger to the public health, safety, or welfare requires emergency suspension of a license, it shall show compliance in its order with the requirements imposed by subsection 120.54(9) on agencies making emergency rules. Summary suspension may be ordered, but a formal suspension or revocation proceeding under this section shall also be promptly instituted and acted upon." (Emphasis added).
The requirements of Section 120.54(9)(a) are:
"If an agency finds that an immediate danger to the public health, safety, or welfare requires emergency action, the agency may adopt any rule necessitated by the immediate danger by any procedure which is fair under the circumstances and necessary to protect the public interest, provided that:
1. The procedure provides at least the procedural protection given by other statutes, the Florida Constitution, or the United States Constitution.
2. The agency takes only that action necessary to protect the public interest under the emergency procedure.
3. The agency publishes in writing at the time of, or prior to, its action the specific facts and reasons for finding an immediate danger to the public health, safety, or welfare and its reasons for concluding that the procedure used is fair under the circumstances. In any event, notice of emergency rules, other than those of educational units or units of government with jurisdiction in only one county or a part thereof, shall be published in the first available issue of the Florida Administrative Weekly. The agency's finding of immediate danger, necessity, and procedural fairness shall be judicially reviewable."
Petitioner argues that Section 120.54(9)(a)(1) guarantees the procedural protection granted under other statutes and cites us to Section 459.14(7) which requires at least 20 days written notice before an osteopathic physician's license can be suspended or revoked, even temporarily. We disagree.
Section 459.14(7) provides:
"The board may not refuse to issue or renew, or to suspend or revoke, any *92 license for any of these causes unless the person accused has been given at least twenty (20) days' notice in writing of the charge against him and a public hearing by the board. Within ten (10) days following the entry of the final order by the board, a copy thereof shall be delivered to the respondent, either personally or by registered or certified mail."
When Section 459.14(7) is read in pari materia with Section 120.60(5) and 120.60(6) it becomes obvious that Section 120.60(5) and Section 459.14(7) both provide for a final determination as to suspension or revocation of a license. Neither section deals with the temporary or summary suspension of a license which is provided for in Section 120.60(6). In our opinion, there would be no need for the Legislature to have adopted this latter section if both a temporary or summary suspension and a final suspension required the same procedural notice requirements. The Legislature has specifically provided for summary suspension when an agency finds an immediate serious danger to the public health, safety or welfare and promptly institutes formal proceedings subsequent to the summary suspension. To accept Petitioner's contention therefore would be tantamount to declaring an act of the Legislature to be a nullity. This we will not do.
We next direct our attention to the question of procedural due process as applied to the facts in this case. Due process is necessarily a flexible term and its application depends upon the demands of the particular situation. As stated by the United States Supreme Court in Matthews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976):
"These decisions underscore the truism that `[d]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances... . [D]ue process is flexible and calls for such procedural protections as the particular situation demands."
Fundamentally, due process requirements are satisfied if an opportunity for a meaningful hearing is provided prior to the final deprivation of a property interest. Weighing the governmental and private interests which are affected, we find that the case sub judice meets the constitutional test of due process.
Unlike the facts in Colorado State Board of Medical Examiners v. District Court of the Seventh Judicial District, 551 P.2d 194 (Colo. 1976) where the Supreme Court of Colorado, under statutes similar to those involved herein, sustained the temporary suspension of a medical doctor's license without a hearing, the Petitioner here was provided notice and an opportunity to be heard. Subsequent to the temporary revocation, formal proceedings were instituted by the Board as required by Section 120.60(6). At the hearing on the temporary suspension, Petitioner appeared with counsel, testified at considerable lenghth, had an opportunity to present evidence and to examine and cross examine witnesses, and had an opportunity to present argument. We find that the procedure utilized satisfies due process requirements. Were it not for the requirement of prompt, formal proceedings subsequent to the temporary suspension, we might hold otherwise.
Petitioner next contends that the order of emergency suspension fails to demonstrate the requisite "immediate danger" and "necessity" as required by Florida Statute, Section 120.54(9)(a). One need only look to the findings of the Board as contained in its order of emergency suspension to determine the emergency nature of the proceeding below. Summarized, those findings are that on November 16, 1977, the Petitioner's hospital privileges at Florida Hospital, Orlando, Florida were revoked; that on November 30, 1977, Petitioner's hospital privileges were revoked at Orlando General Hospital, Orlando, Florida, upon a finding of the hospital's medical staff that Petitioner failed to demonstrate the satisfactory professional skill and judgment expected of him; that on March 6, 1978, one of Petitioner's abortion patients suffered a perforation of the uterus from which she expired after Petitioner failed to properly *93 supervise her recovery for some 33 hours; and, that Petitioner would continue to act in such fashion as to constitute an immediate serious danger to the public health, safety and welfare.
It is the position of the Petitioner that because the first two of the above findings occurred more than 110 days prior to the emergency hearing, there was no demonstration of an immediate emergency. Petitioner therefore would have us, and the Board, overlook the straw that broke the camel's back, the death of a patient due to alleged failure to comply with minimal standards of acceptable osteopathic medical practice. We can conceive of no greater emergency of immediate necessity than that which endangers the preservation of human life.
Accordingly, certiorari is DENIED and the Board is directed to conduct formal proceedings pursuant to Section 120.60(6) in a timely manner upon adequate notice.
DOWNEY, C.J., and ANSTEAD, J., concur.