498 So.2d 1328 (1986)
Jack Harold GRANTHAM, Appellant,
v.
Bill GUNTER, Insurance Commissioner for the State of Florida, Department of Insurance and Treasurer, Appellee.
No. 4-86-0370.
District Court of Appeal of Florida, Fourth District.
December 10, 1986.
Rehearing Denied January 15, 1987.
*1329 Young T. Tindall, Fort Lauderdale, for appellant.
Lealand L. McCharen, Tallahassee, for appellee.
GLICKSTEIN, Judge.
This is an appeal of the temporary suspension by emergency order of the insurance commissioner, of a limited surety agent's license, pursuant to section 648.45(1), Florida Statutes, which appellant contends is unconstitutional. We affirm.
On December 19, 1985, a five-count criminal information, including three felony charges  possession of a firearm while *1330 committing a felony, aggravated assault with a firearm, and failure to redeliver a hired vehicle  was filed against appellant Jack Harold Grantham in Broward County. On January 24, 1986, the Florida Department of Insurance issued an emergency order suspending Grantham's limited surety (bail bonds) license, pursuant to section 648.45(1), Florida Statutes. The emergency order set forth the suspended licensee's right to request an expedited hearing on the order, and told him of his right under section 120.68, Florida Statutes, to seek judicial review of the order. Simultaneously, the Department of Insurance filed an administrative complaint against Grantham, pursuant to section 120.60(8), Florida Statutes.
On February 11, 1986, the parties entered into a stipulation in which Grantham stipulated he had been charged with the three felony counts and that he was a limited surety agent, and waived his right to an expedited hearing. Grantham subsequently filed a request for formal hearing and response to administrative complaint, wherein he temporarily waived his right to a hearing on the administrative complaint.
There are two issues, both of which we answer in the negative:
1. Whether section 648.45(1), Florida Statutes (1985), is unconstitutional for violation of a licensee's right to due process.
2. Whether section 648.45(1), is unconstitutional for violation of a licensee's right to equal protection.
Section 648.45(1), Florida Statutes (1985), contains the following mandate:
The department shall immediately temporarily suspend any license issued under this chapter when the licensee has been charged with a felony or a crime involving moral turpitude or a crime punishable by imprisonment of 1 year or more under the law of any state, territory, or country. Such suspension shall continue if the licensee has been found guilty of, or has pleaded guilty or no contest to, the crime, whether or not a judgment or conviction has been entered, during a pending appeal.

I
Appellant argues first that because the above statute makes no provision for a pre-suspension hearing, formal or informal, but calls for an immediate suspension, the statute is invalid, constitutionally, on its face for failure to provide for due process, as required in the fourteenth amendment to the United States Constitution and Article 1, section 9 of the Florida Constitution. These constitutional provisions state that no person shall be deprived of life, liberty or property without due process of law. It is appellant's contention that a bail bondsman has a property interest in his license such that he is entitled under the above constitutional provisions to a hearing prior to suspension of the license.
To the extent appellant bases his first issue merely on the silence of the statute he attacks constitutionally, the state points out that failure of a governing statute to provide for notice and hearing does not invalidate the statute where such requirements may be incorporated into the statute by implication. 51 Am.Jur.2d Licenses and Permits § 60 (1970). Florida's Administrative Procedure Act sets forth extensive provisions for notice and hearings prior to any action against a license unless there is an explicit statutory exemption, section 120.57, Florida Statutes (1985); and section 120.60(8) provides for emergency suspension under the police power, followed, nevertheless, by a formal suspension proceeding. Moreover, an emergency license suspension order must show compliance with the requirements set forth in section 120.54(9) in connection with agency adoption of an emergency rule.
Appellee urges, we believe correctly, that by implication the pertinent provisions of the Administrative Procedure Act are incorporated in section 648.45(1), and points out that the agency here scrupulously followed those procedures when it suspended appellant's license temporarily in an emergency. Appellee points out that an agency rule promulgated by the agency *1331 sets forth the full procedure to be followed, stating time limits for steps to be taken following the emergency temporary suspension to assure the licensee of a proper formal procedure. See Rule 4-38.53, Florida Administrative Code. Additionally, rule 28-6.11 makes clear that a hearing may be held in earlier than fourteen days as is provided for in the rule about notice for a hearing, if the aggrieved party requests it; and requires that after an emergency action the formal proceeding must be initiated within twenty days. In the instant case the Department of Insurance offered to hold a hearing within three days of a request from appellant. In sum, to the extent appellant raises a constitutional infirmity based purely on the face of the statute, his point is without merit.
As to whether the due process provisions of the Constitutions of the United States and Florida require that a hearing precede an emergency temporary license suspension, the question basically depends on the nature of the licensee's interest. If it were a life or liberty interest, that is probably true; but it is not.
Some of the cases on which appellant relies are really inapposite, because the nature of the interest involved is so different from the interest of a bail bondsman in his license. Thus Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), held that a statute which authorized a seller of goods under a conditional sales contract to get a writ from a court clerk and thereby obtain prejudgment repossession with the help of the sheriff violated due process because there was no provision to the buyer of prior notice and an opportunity for a hearing. Obviously the property rights of a buyer in goods are different from the rights of a licensee in his license, and the public's interest represented in the police power of the state, which has to be weighed against whatever interest of the licensee is being affected here, is not implicated in Fuentes at all.
In Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), it was held that due process requires an evidentiary hearing prior to termination of welfare benefits. The opinion stressed that termination of aid pending resolution of a controversy over eligibility could deprive an eligible recipient of absolute necessities; yet he would be lacking in independent resources; hence, his situation would at once become desperate. The court indicated that a person who needs to concentrate on his very survival cannot very well devote his energies to the seeking of redress from the welfare bureaucracy after benefits are terminated. On the other hand, in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the United States Supreme Court said a Goldberg-type hearing prior to termination is not required when Social Security disability benefits are discontinued on the ground the worker is no longer disabled, even though such benefits constitute a statutorily created property interest protected by the fifth amendment (which for present purposes, is considered also to be incorporated in the fourteenth). After examining several other cases including Goldberg and Fuentes, the Eldridge Court laid down the following rule:
[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. See, e.g., Goldberg v. Kelly, supra, 397 U.S., at 263-271, 90 S.Ct., at 1018-1022.
Id. at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33. Contrasting with Goldberg, the Eldridge Court noted that eligibility for disability benefits is wholly unrelated to the worker's financial status; the value of an evidentiary hearing, or even an oral presentation to the decision maker, was substantially less than in Goldberg because what was basic *1332 in Eldridge was a medical assessment of the beneficiary's condition of health, and a medical assessment is usually better communicated through written documents, from medical personnel, than is information on behalf of a welfare recipient; the cost of pre-termination hearings could outweigh the benefit to the individual of the additional safeguard; and, finally, substantial weight must be given to the good faith judgments of the administrators entrusted with administering the system that the procedures they have provided assure fair consideration to the entitlement claims of individuals.
This court was well aware of Eldridge when it reviewed the emergency temporary suspension of an osteopathic physician's license in Tauber v. State Board of Osteopathic Examiners, 362 So.2d 90 (Fla. 4th DCA 1978). There the suspension took place only after the physician had, by mail, two days' notice of a hearing, and the hearing took place. In Tauber this court stated, however, that, "[f]undamentally, due process requirements are satisfied if an opportunity for a meaningful hearing is provided prior to the final deprivation of a property interest." Id. at 92. The court had first examined the pertinent statutes including parts of the Administrative Procedure Act (APA) which it read in pari materia with the statutes particularly concerned with licensure and de-licensure of osteopaths. The parts of the APA involved included, among others, then section 120.60(6), which is now section 120.60(8), and section 120.54(9)(a), to which we have alluded above, and which sets forth the procedural protection requirements to be met when an emergency rule is to be adopted under the police power. The court concluded it was the intention of the legislature to distinguish the necessary procedures for a temporary emergency suspension of a license from those required for a final suspension. The Tauber court called attention also to the opinion of a foreign jurisdiction in Colorado State Board of Medical Examiners v. District Court of the Seventh Judicial District, 551 P.2d 194 (Colo. 1976), wherein, under similar statutes to those involved in Tauber, a temporary suspension of a medical doctor's license without a hearing was sustained. The Tauber court expressed the view that the clear provision for prompt, formal proceedings subsequent to the temporary suspension was sufficient to meet due process requirements. We see no reason why we should not here apply this statement in Tauber. Here, too, the statute provides for prompt notice and opportunity for a hearing after the suspension, and the order fully apprised appellant of his right to request such. Cf. Saviak v. Gunter, 375 So.2d 1080 (Fla. 1st DCA (1979) ("Whatever pre-termination hearing may be constitutionally required, Section 120.60(6) [now section 120.60(8)] is not facially invalid for failing to require that hearing; it is sufficient that the opportunity for hearing was in fact provided."). Interestingly, in the instant case appellant waived a subsequent hearing because the fact of his being formally charged with felonies was incontrovertible. One wonders what a hearing (such as appellant demands) prior to the emergency temporary suspension of Grantham's license could have accomplished.
It may be true as appellant suggests that members of some professions have been accorded pre-suspension hearings whereas other state licensees are granted only post-suspension hearings. Such an argument seems more appropriate to the second, equal protection issue than to the due process issue. Nevertheless, the Department points out that in Ampuero v. Department of Professional Regulation, Board of Medical Examiners, 410 So.2d 213 (Fla. 3d DCA 1982), the appellate court observed the state had a duty to grant the physician, and conclude without appreciable delay, a post-suspension hearing. This suggests no pre-suspension hearing was required. Appellant errs when he states lawyers always get hearings before they are disciplined. As appellee shows in his brief, under article XI, rule 11.10(6) of the Integration Rule of The Florida Bar, temporary suspension of *1333 an attorney may be accomplished in some circumstances without a prior hearing.
Appellant distinguishes Ampuero in that there the emergency order merely restricted the physician's ability to prescribe drugs, whereas here suspension of the appellant's license puts him out of the bail bond business. The emergency suspension does this only temporarily, however; a permanent revocation occurs only after there has been a hearing opportunity.
As the United States Supreme Court stated in Cafeteria & Restaurant Workers Union, Local 473, AFL-CIO v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748-49, 6 L.Ed.2d 1230, 1236 (1961), what due process procedures are necessary depends on what is the nature of the government function that is involved and what is the nature of the private interest affected by the governmental action.
Here, the Department of Insurance has an interest in protecting persons needing to deal with a bail bondsman from the risk that they may be criminally abused by someone who is reasonably believed to have committed felonious acts. The Department also has an interest in avoiding the time, expense and unnecessary disruption of its other affairs that might result from repetitive hearings  a pre-suspension hearing and later a hearing on continuing the suspension or revoking the license. Cf. Johnson v. School Board of Palm Beach County, 403 So.2d 520, 523 (Fla. 1st DCA 1981). Appellant's interest is continuation in the bail bond business pending an evidentiary hearing. In Johnson, suspension of a tenured teacher without pay and without a pre-suspension hearing was held to be permissible because if the teacher was to be reinstated he would be awarded back pay. Thus the property interest of the appellant there was insufficient to require a pre-suspension hearing. Here, of course, no reimbursement will be forthcoming should appellant's license be restored. While it may be true that a bail bondsman's livelihood depends on his retaining his license, he does not obtain his license on the basis of his need for income, but because he fulfills certain other qualifications. It is not to be assumed, as in public assistance cases, see Goldberg v. Kelly, that suspension of a bail bondsman's license will deprive him at once of his necessities. Cf. Mathews v. Eldridge. If it appears on reasonable grounds that a bail bondsman has ceased to meet one or more requirements of such a licensee, suspension of his license without prior hearing, when notice and prompt subsequent hearing are provided for, should not be viewed as a due process violation.
Appellant's argument that suspension of his license results in deprivation of life and liberty deserves no analysis, as he does not indicate how this is so. His reasoning that the statute covering temporary suspension of a bail bondsman's license permits a probable cause standard  that of a mere information  to be used to deprive an insurance licensee of a significant interest is in a sense true. However, the deprivation is temporary, unless the person is convicted of a felony; there is no requirement that the reasonable doubt standard be applied in administrative actions, including license revocations, Bowling v. Department of Insurance, 394 So.2d 165 (Fla. 1st DCA 1981); and, as indicated in Eldridge, the due process standard that should be applied balances the public's interest against that of the licensee. It was not unreasonable for the legislature to determine that a person charged with a felony with a firearm could be a danger to the welfare or safety of the public if allowed to continue to act as a bail bondsman. Appellee points out that attorneys may be suspended from the bar on a lower standard than criminal probable cause.
In his reply brief appellant suggests that there is a conflict between his fifth amendment right not to incriminate himself and any effort to defend himself in a post-suspension hearing on the license suspension. It would probably be more precise to say that effectively a suspension of this type will continue until he is either exonerated or convicted of the felonies. However, we know of no authority that shows a licensee's *1334 interest in his license is so strong that his constitutional rights are violated if his license is suspended for so long as felony charges against him remain pending. The reason, we think, is apparent: there is, to use the present circumstances as an example, no right to be a bail bondsman so strong as to overcome society's interest in having as bail bondsmen persons not charged with serious crimes. If it should develop that appellant is innocent, his license will be restored; but the state should not be compelled to run the risk that he will commit a serious felony while acting as a bail bondsman. A bail bondsman is not an officer of the court in the way an attorney is, but his function is too closely connected with the courts for an accused felon to be allowed to perform such a function.

II
Grantham's second point is that his constitutional right to equal protection under the laws is violated by a suspension of his bail bondsman's license for having been charged with a firearm-related felony. He argues there is no reasonable relation between the state objective of protecting the public health, safety and welfare and authorization of an emergency suspension of his license because of that felony charge. There may be a modicum of disingenuousness about his inability to distinguish a bail bondsman's legitimate use of a firearm while conducting his business and the felony use of a firearm. It may be precisely because a bail bondsman may find need to use a firearm in his business, as to rearrest one who has jumped his bond, that the legislature showed such concern about a bail bondsman's formally charged felonious use of a firearm. We think the legislature may very legitimately classify a bail bondsman who has been informed against for use of a firearm in committing a felony separately from bail bondsmen who use firearms legitimately in their business. A renegade bail bondsman is a very dangerous person, much like a renegade policeman. It is not entirely accurate to say bail bondsmen are statutorily treated differently from licensees in those other professions to which appellee refers; however, if bail bondsmen are treated differently, there could be a legitimate state reason for making a special classification of bail bondsmen by reason of the fact that such persons may have use for firearms in performing their occupation.
In the emergency order, the Department explained that the rationale behind the emergency suspension statute comes from the ease with which a bail bondsman could abuse his power, under his license, over the persons he supplies with bonds. The legislature could legitimately believe that bail bondsmen ought to be as virtuous as Caesar's wife. It really matters little whether  and we don't know in this case  the alleged felonies were committed against accused persons with whom Grantham had security business, or other persons.
If any state of facts can reasonably be conceived that will support the legislature's classification, that state of facts will be presumed to have existed when the legislature enacted it. Northridge General Hospital v. City of Oakland Park, 374 So.2d 461, 464-65 (Fla. 1979). We can readily discern a reasonable basis for the classification created by section 648.45(1), Florida Statutes.
DELL and GUNTHER, JJ., concur.