684 So.2d 836 (1996)
Benjamin RUCKER, Appellant,
v.
CITY OF OCALA and Crawford & Co., Appellees.
No. 95-3224.
District Court of Appeal of Florida, First District.
December 5, 1996.
Rehearing Denied January 10, 1997.
*837 Barbara L. Richard, Ocala, for appellant.
Betty D. Marion, Ocala, for appellees.
KAHN, Judge.
In this workers' compensation appeal, the claimant, Benjamin Rucker, challenges the constitutionality of section 440.13(5)(e), Florida Statutes (Supp.1994). The statute in question delineates and limits the medical witnesses who may testify in a workers' compensation case. This limitation, argues Rucker, denies him his constitutional right of access to courts and offends his due process *838 and equal protection guarantees under the Florida Constitution. Because we find the challenges raised to be without merit, we affirm.

I

Factual Background
On June 14, 1994, Rucker sustained a compensable injury to his back and neck in his employment as a sanitation worker for the City of Ocala. Rucker received medical treatment from physicians at Care-1, including Dr. Cunningham, Dr. Hannah, and Dr. Webb. These doctors diagnosed cervical, thoracic, and lumbar strain. Rucker also underwent eight weeks of physical therapy, and he subsequently saw Dr. DiSclafani, a neurosurgeon, and Dr. Faris, an orthopedic surgeon.
On September 8, 1994, the physicians at Care-1, particularly Dr. Hannah, released Rucker to full duty with a 50-pound lifting restriction. Following his injury, the employer had assigned Rucker to a light duty position and Rucker worked in that capacity until September 15, 1994, but he did not return to work thereafter. Rucker continued to experience pain in his back and neck, and sought treatment from Dr. Bennett, a chiropractor. Rucker did not ask the employer/servicing agent (E/SA) or the physicians at Care-1 to refer him to a chiropractor.
In a request for assistance dated September 23, 1994, Rucker requested temporary total disability (TTD) or temporary partial disability (TPD) benefits from June 17, 1994, to date and continuing; authorization of Dr. Bennett for continued chiropractic care; authorization for an independent medical examination (IME) by Dr. Jones, an orthopedic surgeon; and penalties, interest, costs, and attorney's fees. The E/SA denied this request. Rucker subsequently filed a corresponding petition for benefits.
Rucker eventually had an IME with Dr. Jones on November 22, 1994. In his IME report, Dr. Jones indicated that Rucker had cervical sprain with a bulging disc C5-C6 and lumbosacral sprain with bilateral foraminal encroachment. Dr. Jones also indicated that Rucker had reached maximum medical improvement (MMI), with six percent cervical spine impairment and six percent lumbosacral spine impairment. Dr. Jones opined that Rucker "should return to work at light duty" and "[h]is limitations are no lifting over 50 pounds and no overhead work."
In addition, between October 1994 and March 1995, in response to Rucker's repeated requests for authorization of Dr. Bennett, the E/SA offered to authorize four chiropractors: Dr. Haling, Dr. Frey, Dr. Berning, and Dr. Anglin. Rucker declined Dr. Haling altogether. Rucker requested an appointment with Dr. Frey, but when the E/SA did not make that appointment by a certain time, Rucker returned to Dr. Bennett. When the E/SA notified Rucker of an appointment with Dr. Berning, Rucker refused to see him. The E/SA then offered Dr. Haling again, but Rucker again declined. In March 1995, the E/SA offered Dr. Anglin, who Rucker began seeing for treatment. Rucker denied receiving any pain relief as a result of this treatment, however, and discontinued seeing Dr. Anglin. In March 1995, Rucker filed another petition for benefits requesting payment of Dr. Bennett's bills. This case turns on whether Dr. Bennett, who treated Rucker but was never authorized by the E/SA, should have been allowed to testify on Rucker's behalf.

II

Proceedings Before the JCC
Before the merits hearing, the E/SA sought an order excluding Dr. Bennett's testimony. Citing section 440.13(5)(e), Florida Statutes (Supp.1994),[1] the E/SA argued that *839 because they had never authorized Dr. Bennett, his testimony was prohibited.
In response, Rucker filed a Motion to Designate Dr. Bennett as Medical Advisor. In this motion, Rucker argued that the E/SA had not authorized Dr. Bennett, nor had he performed an IME; therefore, pursuant to section 440.13(5)(e), Dr. Bennett's testimony could be admitted into evidence only if the JCC appointed him as a medical advisor. Rucker asserted that because the issues pending before the JCC included authorization of Dr. Bennett and payment for his bills, Rucker would be severely prejudiced without Dr. Bennett's testimony. Rucker further asserted that refusal to admit Dr. Bennett's testimony into evidence would amount to a denial of his right to a fair hearing and due process of law.
The JCC granted the E/SA's request to exclude Dr. Bennett's testimony. The JCC also denied Rucker's Motion to Designate, citing section 440.13(4) and Florida Administrative Code Rule 38F-54.002(10). At the final hearing, Rucker moved Dr. Bennett's deposition into evidence, and the JCC denied that request. Rucker then proffered the deposition into the record.
In the final order, the JCC denied Rucker's petition for benefits. Regarding the request for chiropractic care and authorization of Dr. Bennett, the JCC indicated that he was "required by statute and existing case law to deny this part of the claim because Dr. Bennett's testimony was excluded by operation of statute." Similarly, regarding the request for TTD and/or TPD benefits, the JCC determined that "[b]ased upon the evidence which was admitted into the record, I find that the Employee voluntarily limited his income from December 15, 1994 through the date of the hearing (with one exception) and is therefore precluded from recovering any TPD benefits during this time." The JCC found that "all of the physicians whose records or testimony is in the record seemed to agree that the Claimant could return to work, provided he did not have to lift over 50 pounds."
Rucker has appealed and raises four points. Specifically, Rucker asserts that the JCC erred in interpreting the term "authorized treating provider" in section 440.13(5)(e) to mean treating providers authorized by the E/SA, thereby rendering the statute unconstitutional. Rucker also asserts that the JCC erred in applying section 440.13(5)(e) to exclude Dr. Bennett's testimony because the statute is unconstitutional (1) as a denial of procedural due process in violation of article I, section 9 of the Florida Constitution, (2) as a denial of access to courts in violation of article I, section 21 of the Florida Constitution, and (3) as a violation of equal protection as guaranteed by article I, section 2 of the Florida Constitution.

III

"Authorized Treating Provider"
As to the first point on appeal, we find that the JCC did not err in interpreting the term "authorized treating provider" in section 440.13(5)(e) to mean treating providers authorized by the E/SA. The term "authorized treating provider" is not defined in chapter 440. Nevertheless, a review of other sections in chapter 440 reveals that the clear *840 meaning of the term is treating providers authorized by the employer/carrier/servicing agent. For example, similar to the statute at issue in this case, section 440.29(4), Florida Statutes (Supp.1994), provides in pertinent part: "All medical reports of authorized treating health care providers relating to the claimant and subject accident shall be received into evidence by the judge of compensation claims upon proper motion...." In addition, section 440.13(3)(a) provides in pertinent part:
(3) PROVIDER ELIGIBILITY; AUTHORIZATION.
(a) As a condition to eligibility for payment under this chapter, a health care provider who renders services must be a certified health care provider and must receive authorization from the carrier before providing treatment. This paragraph does not apply to emergency care....
See also § 440.13(14)(a), Fla.Stat. (Supp. 1994) (payment of medical fees). Further, section 440.13(3)(c) prohibits a health care provider from referring an employee without prior authorization from the carrier, except when emergency care is rendered. Finally, Rule 38F-7.516(2), Florida Administrative Code, defines "authorization" as "[a]pproval from the carrier to render or order the provision of health care services." Read in conjunction with the foregoing provisions, the term "authorized treating provider" in section 440.13(5)(e) means a treating provider authorized by the E/SA, as determined by the JCC in this case.

IV

Procedural Due Process
Next, appellant challenges section 440.13(5)(e) as an unconstitutional denial of procedural due process in violation of article I, section 9 of the Florida Constitution.[2] Section 440.13(5)(e), Florida Statutes (Supp. 1994), provides: "No medical opinion other than the opinion of a medical advisor appointed by the judge of compensation claims or division, an independent medical examiner, or an authorized treating provider is admissible in proceedings before the judge of compensation claims."[3] Thus, under the statute, for a medical opinion to be admissible in a proceeding before a JCC, it must come from one of three sources: (1) a medical advisor appointed by the JCC or division; (2) an independent medical examiner; or (3) an authorized treating provider. In this case, Dr. Bennett was not an IME physician and was not authorized by the E/SA. In addition, the JCC denied Rucker's Motion to Designate Dr. Bennett as Medical Advisor. Accordingly, pursuant to the statute, the JCC determined that Dr. Bennett's opinions were not admissible.
Appellant asserts that Dr. Bennett's testimony was essential to his claim and that its exclusion, pursuant to section 440.13(5)(e), constituted a denial of a full and fair opportunity to be heard. Essentially, Rucker argues that because he could not introduce opinions from any doctor he wished, he could not meet his burden of proof to show entitlement to the claimed benefits, and this amounts to a denial of procedural due process.
"Procedural due process rights derive from a property interest in which the individual has a legitimate claim." Metropolitan Dade County v. Sokolowski, 439 So.2d 932, 934 (Fla. 3d DCA 1983), petition for review denied, 450 So.2d 488 (Fla.1984). An injured employee's right to receive workers' compensation benefits qualifies as such a property interest. See De Ayala v. Florida Farm Bureau Casualty Ins. Co., 543 So.2d 204, 206 n. 6 (Fla.1989) (Analyzing an equal protection claim, the court stated, "[I]n the sense that the worker's compensation system replaced other rights formerly afforded to workers, we cannot agree with the district court that worker's compensation is entirely in the nature of a privilege."); Florida Forest & Park Serv. v. Strickland, 154 Fla. 472, 18 So.2d 251, 254 (1944) ("A right to compensation *841 having accrued, at least potentially, by the happening of the injury, and the compensation claimant having proceeded by a judicially approved statutory course of procedure to enforce the claim, such valuable potential property or contract right to compensation should not be cut off by subsequent overruling court decision given a retrospective operation." (emphasis added)); Sokolowski, 439 So.2d at 934 ("A property interest may be created by statute, ordinance, or contract...."); see also Art. I, § 2, Fla. Const. ("All natural persons are equal before the law and have inalienable rights, among which are the right ... to be awarded for industry...."). "Property rights are among the basic substantive rights expressly protected by the Florida Constitution." Department of Law Enforce. v. Real Property, 588 So.2d 957, 964 (Fla.1991). "Once acquired, a property interest falls within the protections of procedural due process." Sokolowski, 439 So.2d at 934. Therefore, an injured employee's right to receive workers' compensation, as a property right, must be protected by procedural safeguards including notice and an opportunity to be heard. See Real Property, 588 So.2d at 964; see also Art. I, § 9, Fla. Const. ("No person shall be deprived of life, liberty or property without due process of law...."); Peoples Bank of Indian River County v. State, Dep't of Bank. & Fin., 395 So.2d 521, 524 (Fla.1981) ("The legislature may determine by what process and procedure legal rights may be asserted and determined provided that the procedure adopted affords reasonable notice and a fair opportunity to be heard before rights are decided.").
To qualify under due process standards, the opportunity to be heard must be meaningful, full and fair, and not merely colorable or illusive. Sokolowski, 439 So.2d at 934 ("To qualify under due process standards, the opportunity to be heard must be meaningful."); Tauber v. State Bd. of Osteopathic Medical Examiners, 362 So.2d 90, 92 (Fla. 4th DCA 1978) ("Fundamentally, due process requirements are satisfied if an opportunity for a meaningful hearing is provided prior to the final deprivation of a property interest."), cert. denied, 368 So.2d 1374 (Fla. 1979); Pelle v. Diners Club, 287 So.2d 737, 738 (Fla. 3d DCA 1974) ("It is fundamental that the constitutional guarantee of due process, which extends into every proceeding, requires that the opportunity to be heard be full and fair, not merely colorable or illusive."); accord State Plant Bd. v. Smith, 110 So.2d 401, 407 (Fla.1959); Ryan's Furniture Exchange, Inc. v. McNair, 120 Fla. 109, 162 So. 483, 487 (1935). See also Neff v. Adler, 416 So.2d 1240, 1242-43 (Fla. 4th DCA 1982) ("The fundamentals of procedural due process are (1) a hearing (2) before an impartial decision-maker, after (3) fair notice of the charges and allegations, (4) with an opportunity to present one's own case."). Nevertheless, "[t]he manner in which due process protections apply vary with the character of the interests and the nature of the process involved." Real Property, 588 So.2d at 960. "There is no single, inflexible test by which courts determine whether the requirements of procedural due process have been met." Id. As the Florida Supreme Court has explained, "the formalities requisite in judicial proceedings are not necessary in order to meet the due process requirements in the administrative process." Hadley, 411 So.2d at 187. See Dixon v. Love, 431 U.S. 105, 115, 97 S.Ct. 1723, 1729, 52 L.Ed.2d 172 (1977) ("[P]rocedural due process in the administrative setting does not always require application of the judicial model."); Mathews v. Eldridge, 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976) ("[D]ifferences in the origin and function of administrative agencies `preclude wholesale transplantation of the rules of procedure, trial and review which have evolved from the history and experience of the courts.' The judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances." (citation omitted)).
No procedural due process violation occurred by the application of section 440.13(5)(e) in this case. Because workers' compensation proceedings are administrative in nature, less stringent formalities are needed to satisfy due process concerns. Although Rucker was somewhat limited in the medical opinions he could use to support his claim, he was not completely denied the right to present evidence. Moreover, that limitation resulted *842 largely from his failure to pursue available alternative methods of obtaining and introducing medical opinions under the statute and case law.[4]
For example, Rucker could have selected Dr. Bennett, or another chiropractor, as an IME physician rather than Dr. Jones, an orthopedic surgeon. See § 440.13(5), Fla. Stat. (Supp.1994). Further, Dr. Jones, as an orthopedic surgeon, could have been questioned regarding Rucker's need for chiropractic care if he had the requisite knowledge and qualifications. See Clair v. Glades County Bd. of Comm'rs, 649 So.2d 224, 225 (Fla.1995) ("[S]ection 440.13, Florida Statutes (1983), does not preclude physicians licensed under one statute from testifying regarding reasonableness and necessity of treatment by a physician licensed under another statute, provided the testifying physician is, based on training and experience, competent to render an expert opinion concerning treatment for the illness or injury under review."); Spears v. Gates Energy Products, 621 So.2d 1386, 1388 n. 2 (Fla. 1st DCA 1993) ("The fact that [a doctor] is an orthopedist would not disqualify him from rendering an opinion on chiropractic care."); Alford v. G. Pierce Woods Memorial Hosp., 621 So.2d 1380, 1381-83 (Fla. 1st DCA 1993) (where orthopedic surgeon possessed enough knowledge about chiropractic manipulation to render an opinion as to effect of such movement on spine of claimant, JCC could accept orthopedic surgeon's opinion regarding appropriateness of chiropractic care). Dr. Jones was not asked any questions, however, concerning the reasonableness and necessity of the chiropractic care Rucker received or his qualifications to render such an opinion.
Moreover, if Dr. Jones could not qualify to render an opinion concerning chiropractic care, Rucker could have requested appointment of an alternate IME physician pursuant to section 440.13(5)(b), Florida Statutes (Supp.1994). This portion of the statute contemplates the selection of an alternate or successive IME physician in several instances, including where the original examiner is "not qualified to render an opinion upon an aspect of the employee's illness or injury which is material to the claim for benefits."
In the present case appellant actually had chiropractic testimony available to him. The E/SA had authorized Dr. Anglin, a chiropractor, and Rucker had seen Dr. Anglin several times for treatment. Therefore, Rucker could have introduced testimony from Dr. Anglin, an authorized treating physician, at the hearing before the JCC.
In these circumstances, due process requirements were satisfied because Rucker had an opportunity for a meaningful hearing appropriate to the nature of the case. Accordingly, we reject appellant's contention that the statute violates his constitutional right to procedural due process guaranteed by article I, section 9 of the Florida Constitution.

V

Access to Courts
Appellant also asserts that the statute is unconstitutional as a violation of access to courts guaranteed by article I, section 21 of the Florida Constitution.[5] He argues that although the exclusive remedy provided by the workers' compensation system itself has been found to be a reasonable alternative to an injured worker's common law tort remedies, section 440.13(5)(e), Florida Statutes (Supp.1994), as applied within that system, is an unreasonable burden on the employee's constitutional right of access to courts. As support for this argument, appellant maintains, as in the due process argument, that he was statutorily barred from calling the very witness who could provide the proof he needed to show entitlement to the claimed *843 benefits. Appellant argues that this prohibition of essential competent substantial testimony is an unreasonable burden or restriction on his right to free access to the courts.
The statute in question does restrict the range of medical witnesses an injured employee may use to prove entitlement to workers' compensation benefits. Because the injured employee's cause of action has not been totally eliminated, however, the amendment does not violate article I, section 21. See John v. GDG Servs., Inc., 424 So.2d 114, 116 (Fla. 1st DCA 1982) (Upholding against an access to courts challenge an amendment to section 440.15(3)(b), concerning permanent impairment benefits, this court reasoned: "Although we note the benefits under the new wage-loss provisions may result in reduced benefits, the right to recover for industrial injuries has not been so reduced as to be effectively eliminated.") (emphasis added), decision approved, 440 So.2d 1286 (Fla.1983); Mahoney v. Sears, Roebuck & Co., 419 So.2d 754, 755-56 (Fla. 1st DCA 1982) (The court noted that "while Section 440.15(3)(a)1. has significantly diminished Mahoney's recovery, it has not totally eliminated the previously recognized cause of action and, as such, does not offend article I, Section 21, of the Florida Constitution." (citations omitted; emphasis added)), decision approved, 440 So.2d 1285 (Fla.1983).

VI

Equal Protection
Finally, Rucker contends that section 440.13(5)(e) is unconstitutional as a violation of his equal protection rights guaranteed by article I, section 2 of the Florida Constitution.[6] Appellant has failed to demonstrate, however, that any classificatory scheme that may be created by the statute could not rationally advance a legitimate governmental objective. See Sasso v. Ram Property Management, 431 So.2d 204 (Fla. 1st DCA 1983) ("Generally, as long as the classificatory scheme chosen by the legislature rationally advances a legitimate governmental objective, courts will disregard the methods used in achieving the objective, and the challenged enactment will be upheld."), decision approved, 452 So.2d 932 (Fla.1984), appeal dismissed, 469 U.S. 1030, 105 S.Ct. 498, 83 L.Ed.2d 391 (1984). Therefore, this argument must fail. See Peoples Bank, 395 So.2d at 524 (statute is presumed constitutional and party challenging statute has burden of establishing its invalidity).

VII

Conclusion
The limitation on testimony contained in section 440.13(5)(e) does not in and of itself frustrate the claimant seeking to introduce helpful medical testimony. Thus, the JCC overstated the problem by professing that he was required to deny the claim because of the exclusion of Dr. Bennett's testimony. The statutory scheme, read in conjunction with our case law, preserves ample means for an injured worker to produce testimony germane to the pursuit of benefits. These means include the appointment of IME physicians and the use of authorized physicians to prove entitlement to both indemnity benefits and treatment by as yet unauthorized providers. Accordingly, we uphold the statute facially and as applied in this case. We recognize, however, that situations may arise in which the outlets for relief we have discussed here may not be available to a given claimant. We do not, therefore, preclude a future challenge to the statute as applied. See Agency for Health Care Admin. v. Associated Indus. of Fla., 678 So.2d 1239 (Fla. 1996); Martinez v. Scanlan, 582 So.2d 1167, 1176 (Fla.1991).
AFFIRMED.
BARFIELD, C.J., and ERVIN, J., concur.
NOTES
[1] Section 440.13(5), Florida Statutes (Supp. 1994), provides in pertinent part:

INDEPENDENT MEDICAL EXAMINATIONS.
(a) In any dispute concerning overutilization, medical benefits, compensability, or disability under this chapter, the carrier or the employee may select an independent medical examiner. The examiner may be a health care provider treating or providing other care to the employee. An independent medical examiner may not render an opinion outside his area of expertise, as demonstrated by licensure and applicable practice parameters.
(b) Each party is bound by his selection of an independent medical examiner and is entitled to an alternate examiner only if:
1. The examiner is not qualified to render an opinion upon an aspect of the employee's illness or injury which is material to the claim or petition for benefits;
2. The examiner ceases to practice in the specialty relevant to the employee's condition;
3. The examiner is unavailable due to injury, death, or relocation outside a reasonably accessible geographic area; or
4. The parties agree to an alternate examiner.
Any party may request, or a judge of compensation claims may require, designation of a division medical advisor as an independent medical examiner. The opinion of the advisors acting as examiners shall not be afforded the presumption set forth in paragraph (9)(c).
* * * * * *
(e) No medical opinion other than the opinion of a medical advisor appointed by the judge of compensation claims or division, an independent medical examiner, or an authorized treating provider is admissible in proceedings before the judge of compensation claims.
(emphasis added).
[2] Article I, section 9 of the Florida Constitution provides: "No person shall be deprived of life, liberty or property without due process of law, or be twice put in jeopardy for the same offense, or be compelled in any criminal matter to be a witness against himself."
[3] In Southern Bakeries v. Cooper, this court held that section 440.13(5)(e), Florida Statutes (Supp. 1994), effected a substantive change in the law. 659 So.2d 339 (Fla. 1st DCA 1995).
[4] Through counsel at oral argument, appellant made it clear that he believes any legislative restriction of his right to call a medical witness is constitutionally infirm. He therefore argued that his failure to avail himself of other statutorily permissible means to obtain helpful testimony should have no impact on the outcome of this case.
[5] Article I, section 21 of the Florida Constitution provides: "The courts shall be open to every person for redress of any injury and justice shall be administered without sale, denial or delay."
[6] Article I, section 2 of the Florida Constitution provides: "All natural persons are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property; except that the ownership, inheritance, disposition and possession of real property by aliens ineligible for citizenship may be regulated or prohibited by law. No person shall be deprived of any right because of race, religion or physical handicap."