917 So.2d 280 (2005)
ST. AUGUSTINE MARINE CANVAS & UPHOLSTERY, INC. and Associated Industries Insurance Company, Inc., Appellants,
v.
Mildred LUNSFORD, Appellee.
No. 1D04-5560.
District Court of Appeal of Florida, First District.
December 19, 2005.
*281 Rayford H. Taylor, Esquire of Stiles, Taylor & Grace, P.A., Atlanta, GA, Mary Ann Stiles, Esquire of Stiles, Taylor & Grace, P.A., Tampa and John E. Hankal, Esquire of Taylor, Stiles & Grace, Jacksonville, for Appellants.
Raymond M. Ravis, Esquire of Anderson & Howell, P.A., Jacksonville, for Appellee.
BENTON, J.
On this appeal from a compensation order, we conclude that the judge of compensation claims erred in deeming Arnold Graham-Smith, M.D., an authorized treating physician on the supposed authority of section 440.13(3)(d), Florida Statutes (2002). On that basis, we reverse the award of medical benefits for Dr. Graham-Smith's services, as well as temporary total disability and permanent impairment benefits awarded in reliance on his testimony.

I.
Injured lifting a large bolt of fabric on March 21, 2002, while working for St. Augustine Marine Canvas & Upholstery, Inc. (Marine Canvas), Mildred Lunsford first obtained medical care at the Healing Arts Urgent Care Center, then from Dr. Tod Northrup, an orthopedic surgeon, and from Dr. Jyoti Patel, to whom Dr. Northrup referred her for pain management. These providers' authorization  at all pertinent times  to provide "such medically necessary remedial treatment, care, and attendance for such period as the nature of the injury or the process of recovery may require," § 440.13(2)(a), Fla. Stat. (2002), is not in question.
At issue is whether, despite repeated refusals to authorize Dr. Graham-Smith, Marine Canvas and its insurance carrier are nevertheless, as a matter of law, responsible for payment of Dr. Graham-Smith's bills for treatment that included major surgery (which was paid for by Ms. Lunsford's health insurance policy). Although claimant's counsel did not request authorization for the surgery beforehand, claimant's counsel did request that Dr. Graham-Smith be authorized as a treating physician. Also at issue is whether indemnity and impairment benefits were properly awarded on the basis of Dr. Graham-Smith's testimony.

II.
While under Dr. Northrup's care, Ms. Lunsford (through counsel) filed a petition for benefits dated July 25, 2002, requesting authorization for treatment by Dr. Graham-Smith, who, like Dr. Northrup, is an orthopedic surgeon. Marine Canvas and its carrier refused to authorize Dr. Graham-Smith as a treating physician. Simultaneously, they advised Ms. Lunsford that she was entitled to an independent medical examination and to a list of three *282 orthopedic surgeons to choose from, if she wanted a different treating physician. At no time was the offer to authorize an alternative orthopedist withdrawn.
Denial of the petition dated July 25, 2002 notwithstanding, Dr. Graham-Smith's office requested authorization on December 13, 2002, to evaluate and treat Ms. Lunsford, along with prepayment of $600.00 for an appointment her counsel had scheduled with Dr. Graham-Smith. In response, on behalf of Marine Canvas and its carrier, his office was again advised that Dr. Graham-Smith was not authorized to treat the claimant.[1]
In a second petition for benefits dated December 23, 2002, the claimant (through counsel) requested authorization to see Dr. Graham-Smith for a second opinion regarding her treatment. Marine Canvas and its carrier refused to authorize such a second opinion on grounds that no managed care arrangement was in place. See generally § 440.134(6)(c)(9.), Fla. Stat. (2002) (requiring managed care plans to include a "process allowing employees to obtain one second medical opinion").
The claimant filed a third petition for benefits dated February 6, 2003, which requested, along with indemnity benefits, a one-time change of physician to Dr. Graham-Smith and a second opinion by an orthopedic surgeon. Marine Canvas and its carrier responded by agreeing to a one-time change in physician, submitting the names of three orthopedic surgeons (but not Dr. Graham-Smith's) from which the claimant could select, and denying any other authorization for a second opinion. At a mediation conference on March 6, 2003, the employer and its carrier provided the claimant with the names of three orthopedists, informing her she could choose a new treating physician.

III.
Later, on April 16, 2003, Dr. Northrup signed a letter addressed to  and drafted by  the claimant's attorney.[2] A week thereafter, the claimant filed a fourth petition for benefits dated April 23, 2003, requesting authorization for an evaluation and second opinion by Dr. Graham-Smith regarding maximum medical improvement. Attached to the petition was the letter Dr. Northrup had signed, recommending an evaluation by Dr. Graham-Smith "to determine whether she would be a candidate for percutaneous nucleoplasty." The adjuster testified that the copy attached to the petition was the first he had seen of Dr. Northrup's letter.[3]
*283 Marine Canvas and its carrier responded to the April 23, 2003 petition (which was received on April 29, 2003) on May 12, 2003. They did not authorize Dr. Graham-Smith, but stated that the claimant could have an independent medical examination or select a new treating physician from the list of three physicians previously supplied. Mr. Heidemann, who worked for the adjuster, testified that Ms. Lunsford did not then request an independent medical examination, and did not select a physician from the list.
The claimant's attorney sent a letter to counsel for Marine Canvas and its carrier, also dated April 23, 2003, indicating that he had again scheduled a visit for the claimant with Dr. Graham-Smith, this time for June 10, 2003. The letter requested authorization for an initial evaluation and prepayment of $600.00. On June 10, 2003, Mr. Heidemann advised somebody in Dr. Graham-Smith's office that the appointment claimant's counsel had scheduled for that day was not authorized by the employer. Dr. Graham-Smith saw her anyway on June 10, 2003, the day he began diagnosing and treating her, and billing her health insurer. Eventually, he decided that surgery to effect a left sacroiliac joint fusion was indicated,[4] and performed the surgery on October 9, 2003.[5]

IV.
Section 440.13, Florida Statutes (2002), establishes an employer's duty to see that an injured employee gets medical treatment, and prescribes the procedures for authorizing medical providers. The employer must secure provision of medically necessary treatment to an injured employee. See § 440.13(2)(a), Fla. Stat. (2002). The employer has the initial right to select the treating physician. See City of Bartow v. Brewer, 896 So.2d 931, 933 (Fla. 1st DCA 2005). But, after an employer has authorized a medical provider to evaluate and treat an injured employee, the employee may request a one-time change of physician. In that case, the employer must offer the employee a choice of at least three alternative physicians. See § 440.13(2)(f), Fla. Stat. (2002).
If an injured employee requests medically necessary treatment, and the employer fails to provide it within a reasonable time, the employee may obtain *284 such treatment on her own at the employer's expense. See § 440.13(2)(c), Fla. Stat. (2002). Section 440.13[6] does not, however, give the employee the right to treatment by the physician of her choice unless the employer refuses to provide a physician altogether.[7] Complementing one another, section 440.13(2) lists the employer's duties, while section 440.13(3) sets out the procedures under which physicians are authorized to receive payment for treating employees. Sections 440.13(2)(a) and (c) and 440.13(3)(d) are properly read together.[8]
To be eligible for payment, a health care provider must receive authorization from the carrier before providing treatment (except in emergency situations). See § 440.13(3)(a), Fla. Stat. (2002). A health care provider's referral to another health care provider does not constitute authorization by the carrier. See § 440.13(3)(c), Fla. Stat. (2002). When one health care provider refers an employee to another health care provider for treatment, section 440.13(3)(d) applies. See Wuesthoff Mem'l Hosp. v. Schmitt, 694 So.2d 145, 145 (Fla. 1st DCA 1997).
A carrier must respond, by telephone or in writing, to a request for authorization by the close of the third business day after receipt of the request. A carrier who fails to respond to a written request for authorization for referral for medical treatment by the close of the third business day after receipt of the request consents to the medical necessity for such treatment. All such requests must be made to the carrier. Notice to the carrier does not include notice to the employer.
§ 440.13(3)(d), Fla. Stat. (2002). Section 440.13(3)(d) "applies only to requests from doctors for referrals to other doctors." Schmitt, 694 So.2d at 145. If the employee makes the request, the employer has "a reasonable time" to respond; otherwise, treatment is deemed medically necessary. § 440.13(2)(c), Fla. Stat. (2002). If an authorized provider requests treatment, the employer has only three days to respond; otherwise, the treatment is deemed medically *285 necessary. See § 440.13(3)(d), Fla. Stat. (2002).

V.
Here, while the claimant was being treated by one orthopedic surgeon, she asked to be treated by a different orthopedic surgeon, Dr. Graham-Smith. Marine Canvas and its carrier denied her requests for authorization for Dr. Graham-Smith four times. Even after attending mediation, she did not seek treatment from one of the other authorized physicians she was offered. Instead, her attorney scheduled another appointment with Dr. Graham-Smith. Once the appointment had been scheduled, she filed another petition for benefits requesting "[a]uthorization of Dr. Arnold Graham-Smith, orthopedist, for evaluation and a second opinion," and attached the letter signed by Dr. Northrup. The claimant now argues that she had the right to treatment with Dr. Graham-Smith because Marine Canvas and its carrier did not respond to the "request for authorization," i.e., the petition for benefits, within three days. She argues that section 440.13(3)(d) should be applied without regard to what happened prior to the April 23, 2003 petition for benefits to which Dr. Northrup's letter was attached.
But the carrier provided treatment as required by statute. Marine Canvas and its carrier did not fail to authorize or provide treatment medically necessary for the claimant's injuries. The only thing they did not do was authorize the specific doctor that the claimant requested. This was their prerogative. They had the right to select the treating physician initially, and "[s]ection 440.13(2)(c), Florida Statutes, does not authorize the JCC to order treatment with a specific physician, where the E/C promptly offers qualified alternatives." City of Bartow, 896 So.2d at 933.[9]
It is also noteworthy that Dr. Northrup's letter and the petition for benefits requested an evaluation only. Specifically, the letter requested an evaluation to determine whether Ms. Lunsford was a candidate for percutaneous nucleoplasty.[10] Whether or not she received the evaluation that was requested, Dr. Graham-Smith did not perform a percutaneous nucleoplasty. Instead he performed a sacroiliac joint fusion,[11] an unauthorized surgical operation *286 that cost more than $1000.[12] Even if Dr. Graham-Smith had been authorized to evaluate Ms. Lunsford, therefore, it would have been error for the judge of compensation claims to award payment of medical bills for the surgery.

VI.
Finally, because Dr. Graham-Smith was not an expert medical advisor, an independent medical examiner, or an authorized treating physician, his testimony was not admissible at the hearing before the judge of compensation claims; and without his testimony there was no competent, substantial evidence to support the award of temporary total disability benefits for any period after June 10, 2003. Section 440.13(5)(e) states:
No medical opinion other than the opinion of a medical advisor appointed by the judge of compensation claims or agency, an independent medical examiner, or an authorized treating provider is admissible in proceedings before the judges of compensation claims.
Our cases have consistently limited medical opinions admissible in workers' compensation cases to those of an expert medical advisor appointed by the judge of compensation claims, an independent medical examiner, or an authorized treating provider. See Wal-Mart Store # 0649 v. Kirksey, 728 So.2d 268, 269 (Fla. 1st DCA 1999); see also Clairson Int'l v. Rose, 718 So.2d 210, 212 (Fla. 1st DCA 1998) (citing cases limiting medical opinions: "See Washington v. Orange County Sch. Bd., 702 So.2d 1356, 1357 (Fla. 1st DCA 1997) (expert medical advisors); Union Camp Corp. v. Hurst, 696 So.2d 873, 875 (Fla. 1st DCA 1997) (independent medical examiners); Rucker v. City of Ocala, 684 So.2d 836, 839-40 (Fla. 1st DCA 1996), review dismissed, (689 So.2d 1071 (Fla. 1997) (authorized treating providers))").
Dr. Graham-Smith was allowed to testify as an authorized treating physician, and his testimony was the only basis for the award both of permanent impairment benefits and of total temporary disability benefits for the period after June 10, 2003.[13] The judge of compensation claims did not appoint Dr. Graham-Smith as an expert medical advisor. Neither Marine Canvas nor its carrier ever authorized him as a treating physician and, for the reasons explicated above, the judge of compensation claims erred in concluding that he was authorized as a treating physician by operation of section 440.13(3)(d), Florida Statutes (2002).
While the judge of compensation claims did not reach the question whether Dr. Graham-Smith could be viewed as an independent medical examiner, it is clear on this record that the doctor did not meet statutory requirements. Section 440.13(5)(c), states: "An attorney representing a claimant is not authorized to schedule independent medical evaluations under this subsection." See also Lakeland Reg'l Med. Ctr. v. Murphy, 695 So.2d 895, 897 (Fla. 1st DCA 1997) (reversing where the claimant's attorney scheduled an appointment with the doctor instead of using *287 the procedures set forth in sections 440.191 and 440.192); Clairson Int'l, 718 So.2d at 214 n. 4 (explaining that the "narrow focus of the [Lakeland Regional] opinion was the statutory prohibition against counsel's scheduling examinations"). Additionally, an independent medical examiner is defined as "a physician selected by either an employee or a carrier to render one or more independent medical examinations in connection with a dispute arising under this chapter." § 440.13(1)(j), Florida Statutes (2002). "This definition contemplates selection before evaluation...." Clairson, 718 So.2d at 212.
In the present case, the claimant's attorney scheduled appointments for the claimant with Dr. Graham-Smith. The claimant did not, moreover, designate Dr. Graham-Smith as an independent medical examiner until June 12, 2003, which was two days after Dr. Graham-Smith evaluated the claimant. Thus, Dr. Graham-Smith did not meet the criteria under section 440.13(5)(e) to testify at the hearing. Without Dr. Graham-Smith's testimony, the evidence presented supported the award of temporary total benefits only until June 10, 2003, the date Ms. Lunsford first saw Dr. Graham-Smith, and did not support the award of permanent impairment benefits.

VII.
The order under review is reversed insofar as it requires appellants to pay for the medical care Dr. Graham-Smith provided, and insofar as it awards temporary total disability benefits for any period after June 10, 2003, and awards permanent impairment benefits.
POLSTON and HAWKES, JJ., concur.
NOTES
[1] This advice was originally relayed in a telephone call. The next day, December 18, 2002, the adjuster received a letter to which he responded with his own letter to claimant's counsel, advising that Marine Canvas and its carrier would not agree to authorize Dr. Graham-Smith and that the claimant could exercise her right to designate a doctor for an independent medical examination or select from the list of three physicians for a one-time change of physician.
[2] Counsel for the claimant explained to the judge of compensation claims that he had drafted the letter and given it to Dr. Northrup to sign. Dr. Northrup testified that he had not seen the claimant since December 3, 2002, at the time he signed the letter in April. He testified that the claimant had called his office a few times after he stopped treating her and complained that she was not improving, which was why he agreed in April that she should be referred to Dr. Graham-Smith.
[3] The letter stated, in pertinent part:

This letter follows our conference on April 8, 2003 regarding my patient, Mildred Lunsford. I have been following Ms. Lunsford for a work related low back injury which occurred in March 2002 when she was pushing and pulling bolts of fabric at work.
At this point, Ms. Lunsford has received a conservative course of treatment including multiple regimens of physical therapy and multiple injections for pain management by Dr. Jyoti Patel. Unfortunately, Ms. Lunsford's symptoms have not resolved and she continues to suffer from intractable low back pain with radiating symptoms.
It is my opinion that the major contributing cause of this pain and symptomatology is Ms. Lunsford's March 2002 on-the-job-injury. As a result of her injury, it is medically necessary that Ms. Lunsford obtain an evaluation by a qualified orthopedic surgeon to determine whether she would be a candidate for percutaneous nucleoplasty.
It is my experience that the vast majority of patients who undergo percutaneous nucleoplasty experience significant relief of low back pain caused by those factors also present in Ms. Lunsford. It is also my opinion that if Ms. Lunsford is a candidate for percutaneous neucleoplasty [sic], this procedure could prevent the need for a lumbar fusion, which may be warranted given her current condition if all other measures fail.
I strongly recommend that Ms. Lunsford be evaluated for this procedure by Dr. Arnold Graham Smith, as he is known to be one of the most experienced practitioners in northeast Florida with regard to performing percutaneous nucleoplasty.
[4] Dr. Graham-Smith made no mention of percutaneous nucleoplasty.
[5] Only after Dr. Graham-Smith had begun treating Ms. Lunsford, did counsel for Marine Canvas and its carrier receive a copy of the claimant's notice designating independent medical examination, dated June 12, 2003, naming Dr. Graham-Smith as the claimant's independent medical examiner.
[6] When interpreting a statute, the court must first look at the plain language of the statute. See Streeter v. Sullivan, 509 So.2d 268, 271 (Fla.1987). "[W]hen the language of the statute is clear ..., there is no occasion for resorting to the rules of statutory interpretation...." Id. (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)).
[7] See § 440.13(2)(c), Fla. Stat. (2002). Section 440.13(3)(d), Florida Statutes (2002), states only that failure to respond within three days means that the employer "consents to the medical necessity for such treatment." Whether this might have the effect of authorizing the specific provider to whom a claimant was referred, if there has been no previous authorization of the treatment requested, we need not decide. In the present case, treatment has been continuously authorized, and the claimant has never asserted that the orthopedists who were authorized and offered were unable to evaluate her for percutaneous nucleoplasty or to provide any medically necessary treatment. The employer authorized a physician for evaluation as requested in the April 23, 2003 petition for benefits and also authorized three physicians from which the claimant could choose for a one-time change of physician.
[8] Subsections of the same statute must be read in pari materia, especially when they are enacted into law simultaneously. See Okeechobee Health Care v. Collins, 726 So.2d 775, 776 (Fla. 1st DCA 1998). Section 440.13, Florida Statutes, was rewritten in 1993 when the Legislature made significant changes in the workers' compensation statutes: Section 440.13(3)(d) was added and sections 440.13(2)(a) and (c) were amended. See Ch. 93-415, § 17, at 100-102, Laws of Fla. Thus, they should be read together. See Okeechobee, 726 So.2d at 776.
[9] The claimant argues that this long-standing rule does not apply to requests for authorization by a physician under section 440.13(3)(d), even though section 440.13(3)(d) does not specifically address the issue whether a claimant has a right to a particular physician simply because a treating physician recommended a specific physician. See supra note 7.

But it has long been the rule that an employee does not have the right to a particular physician when qualified alternative physicians have been offered. See City of Bartow, 896 So.2d at 933; see also Colace v. Hamlet Estates, Ltd., 573 So.2d 994, 997 (Fla. 1st DCA 1991) ("Where alternative care has been offered, and the parties cannot agree on a treating physician, the claimant must seek a decision through the judge or risk paying the bill.").
The claimant cites no authority to support her contention that this long-standing rule does not apply when a provider makes a referral, where alternative providers have already been authorized and offered to the claimant. Nor does the claimant argue that the doctors who were provided  or the others who were offered  were in any way unqualified to treat her.
[10] We do not hold that a letter addressed to and written by claimant's counsel should be deemed a referral within the meaning of section 440.13(3)(d). The letter, moreover, was never furnished to appellants, except as an attachment to a petition for benefits.
[11] Even if the letter attached to the petition for benefits were somehow efficacious as authorization, Marine Canvas and its carrier would only have been responsible for payment for an evaluation to determine whether she was a candidate for percutaneous nucleoplasty, not for the lengthy treatment and major surgery she in fact received.
[12] Section 440.13(3)(i) states: "Notwithstanding paragraph (d), a claim for ... surgical operations ... that cost more than $1,000... is not valid and reimbursable unless the [surgery] ha[s] been expressly authorized by the carrier, or unless the carrier has failed to respond within 10 days to a written request for authorization...." The claimant was required to request authorization for the surgery under section 440.13(3)(i), "notwithstanding" authorization under section 440.13(3)(d).
[13] Dr. Northrup testified that Ms. Lunsford should have stayed off work until she saw Dr. Graham-Smith, but he offered no opinion regarding her work status after she began seeing Dr. Graham-Smith.