# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

No. 1D2022-2887

———————————————

CHRISTY SIENA,

Appellant,

v.

ORANGE COUNTY FIRE RESCUE
and CCMSI,

Appellees.

———————————————

On appeal from an order of the Office of the Judges of Compensation Claims.
Neal P. Pitts, Judge.

Date of Accident: May 11, 2021.

August 20, 2025

PER CURIAM.

We affirm an order disqualifying a law firm, Bichler & Longo, PLLC, from continuing to represent Christy Siena. The Bichler firm represented Siena in her suit for death benefits under section 440.16, Florida Statutes. When the judge of compensation claims (JCC) ruled against Siena, she appealed to this Court, and that issue was decided in *Siena v. Orange County Fire Rescue/CCMSI*, 373 So. 3d 6 (Fla. 1st DCA 2023).

Although Siena hired a different firm to help with the appellate aspects of that case, she remained represented by the Bichler firm. Meanwhile, the Employer and Carrier (E/C) were and are represented by Broussard, Cullen & Eldridge, P.A. Just after Siena appealed, an attorney left the Broussard firm to join the Bichler firm. The Employer moved to disqualify the Bichler firm, based on conflict created by the attorney's move.

We agree with the JCC's exercise of jurisdiction over the motion under section 440.33, Florida Statutes, Florida Rule of Appellate Procedure 9.180(c)(1), and the Rules Regulating the Florida Bar. *See Matrix Emp. Leasing, Inc. v. Pool*, 46 So. 3d 1147 (Fla. 1st DCA 2010). Although only a pending petition for benefits confers jurisdiction on a JCC per section 440.192(9), Florida Statutes (2020), that jurisdiction persists. S*ee* Patrick John McGinley, 10A *Fla. Prac., Workers' Comp.* § 37:2 n.5 (2023 ed.) ("A JCC's jurisdiction exists or continues in the absence of a pending Petition for Benefits.").

Additionally, we find no fault with the JCC's exercise of discretion. Record testimony supports his findings that the transferring attorney "previously represented a client whose interests are materially adverse to" Siena and "had acquired information [about the E/C] protected by [Rules Regulating the Florida Bar] 4-1.6 and 4-1.9(b) and (c) that is material to the matter." Therefore, rule 4-1.10(b) bars the Bichler firm from representing Siena.

AFFIRMED.

LEWIS and ROBERTS, JJ., concur; TANENBAUM, J., concurs in result with opinion.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

TANENBAUM, J., concurring in result.

Initially, practitioners should note the significance in this court's considering on direct appeal a compensation judge's order disqualifying a lawyer and her law firm. A like order issued by an Article V judge would be treated as an appealable interlocutory (read: non-final) order. *See* Fla. R. App. P. 9.130(a)(3)(E). The fact that the order comes after a final order would not change its nature as a non-final order. *Cf. M.M. v. Fla. Dep't of Child. & Fams.*, 189 So. 3d 134, 138–40 (Fla. 2016) (treating a post-judgment order in a child dependency matter as non-final). We would have jurisdiction to hear the appeal from that order because the Florida Constitution gives the supreme court authority to specify by rule, as a matter of judicial policy, which "interlocutory orders" *of trial courts* we can review. Art. V, § 4(b)(1), Fla. Const.

This being an administrative appeal, however, the scope of our jurisdiction is defined by the constitution and statute—and not at all by court rules. *See id.* § (4)(b)(2) (providing that a district court has "the power of direct review of administrative action, as prescribed by general law"). And the Legislature has given this court the exclusive power to directly "[r]eview *any* order of a judge of compensation claims entered pursuant to" chapter 440, Florida Statutes. § 440.271, Fla. Stat. (emphasis supplied). That is the substantive scope of our jurisdiction, and it is plenary.

The statute then continues by stating those appeals will "be filed in accordance with *rules of procedure* prescribed by the Supreme Court for review of such orders." *Id.* (emphasis supplied). The supreme court's authority in this space being limited to procedure, it adopted Florida Rule of Appellate Procedure 9.180, which applies to "[a]ppellate review of proceedings in workers' compensation cases." Fla. R. App. P. 9.180(a). Under that rule, this court "must" review every "final order," but we also *must* review certain enumerated "nonfinal" orders. *Id.* (b). Orders regarding lawyer disqualification is not listed as one of those non-final orders. Yet, we have the statutory power to review "any" order of a compensation judge. The order before us is such an order—so at a minimum, we certainly *may* review it on direct appeal. The rule is not worded to limit our jurisdiction to hear a direct appeal from a non-final order issued by a compensation judge, nor could it

3

operate in that way. The majority's handling of the review in the present posture is an implicit acknowledgement—one that I fully support—that this court indeed has the authority to directly review "unenumerated" non-final compensation orders, including the order disqualifying counsel in this case.

I cannot, however, join the majority's reliance on *Matrix Employee Leasing, Inc. v. Pool*, 46 So. 3d 1147 (Fla. 1st DCA 2010), and that case opinion's suggestion that a compensation judge has the authority to enforce the Rules Regulating The Florida Bar.

It is common knowledge that a compensation judge is not an Article V judge, but instead an administrative hearing officer in the executive branch. The compensation judge "is vested only with certain limited quasi-judicial powers relating to the adjudication of claims for compensation and benefits," and that "authority must be exercised only in respect to such claims." *Smith v. Piezo Tech. & Pro. Adm'rs*, 427 So. 2d 182, 184 (Fla. 1983) (internal quotation omitted); *see also Farhangi v. Dunkin Donuts*, 728 So. 2d 772, 773 (Fla. 1st DCA 1999) ("A [compensation judge] has no authority or jurisdiction beyond what is specifically conferred by statute."). "Unlike a court of general jurisdiction, a judge of compensation claims *does not have inherent judicial power* but only the power expressly conferred by chapter 440." *McFadden v. Hardrives Constr., Inc.*, 573 So. 2d 1057, 1059 (Fla. 1st DCA 1991) (emphasis supplied) (quoting with approval *Watson v. State, Dep't of Labor & Emp. Sec.*, 552 So. 2d 970, 971 (Fla. 1st DCA 1989) (Zehmer, J., concurring)). And when we look, we see there is no statute making the supreme court's professional code—adopted to govern lawyers as court officers operating within the judiciary—applicable when those lawyers are appearing in workers' compensation administrative proceedings. *But cf.* § 440.442, Fla. Stat. (requiring the "Deputy Chief Judge and judges of compensation claims [to] observe and abide by the Code of Judicial Conduct as adopted by the Florida Supreme Court").

Lawyers, of course, are not inherently "officers" of the executive branch when they appear in administrative proceedings, so the supreme court's professional code does not have automatic application there. The supreme court, as head of the judicial branch, adopted the ethical code regulating lawyers based on its

4

"inherent authority" for doing so, and the courts within the branch have the responsibility to ensure lawyers—as court officers—abide by the code while participating in judicial proceedings. *Abdool v. Bondi*, 141 So. 3d 529, 553 (Fla. 2014); *see also Petition of Jacksonville Bar Ass'n*, 169 So. 674, 675 (Fla. 1936) (recognizing that it "is well established that *courts of justice* have the inherent power to prescribe such rules of practice, such rules to regulate their proceedings and such rules to facilitate the administration of justice, as they may deem necessary," including "all such rules as they may deem necessary to the proper performance of their functions and the functions of their officers and subordinates" (emphasis supplied)); *Petition of Dade Cnty. Bar Ass'n President's & State Att'y's Special Comm.*, 116 So. 2d 1, 4 (Fla. 1959) (noting how the supreme court authorized circuit courts to investigate attorney misconduct and that how the circuit court's ordering "such investigation is but the exercise of an inherent disciplinary jurisdiction which the court has over its officers").

Notably, the Legislature—so, by logical extension, the executive branch (tasked with implementing legislative policy)— "is without authority to directly or indirectly interfere with an attorney's exercise of his or her ethical duties as an officer of the court." *Abdool*, 141 So. 3d at 553; *cf. The Fla. Bar v. Massfeller*, 170 So. 2d 834, 838 (Fla. 1964) (referencing "the inherent power of the [Florida Courts] . . . to discipline members of the Bar practicing before them," which is necessary to ensure "independence of the Courts of the other two coordinate and equal branches" and must be free "of any interference by either of said branches"). Because the compensation judge does not have "inherent judicial power"— which is necessarily precedent to enforcing the professional conduct code—and because the compensation judge, as an officer within the executive branch, cannot interfere with a lawyer's ethical duties as spelled out in the *supreme court's* professional code; there is nothing to support compensation judges' making disqualification decisions based simply on whether the professional rules require it. Presumably, the Office of the Judges of Compensation Claims ("OJCC") could adopt an administrative rule incorporating the professional code for application in compensation proceedings; it possesses the statutory authority to do so. *See* § 440.45(4), Fla. Stat.; *cf. In re The Fla. Bar*, 316 So. 2d 45, 47 (Fla. 1975) (noting inherent "authority for each branch to

adopt an ethical code" and each branch's "own separate authority and procedure for discipline of its officers"). It just has not yet done that; consequently, there are no formal professional conduct rules for a compensation judge to enforce.

So far, I have laid out only why a compensation judge cannot make disqualification decisions based on a strict application of the supreme court's code of professional conduct. I nevertheless support the majority's disposition in this case because the compensation judge *is* statutorily empowered to "preserve and enforce order during any [compensation] proceeding" and to "do all things conformable to law which may be necessary to enable the [compensation] judge effectively to discharge the duties of [] office." § 440.33(1), Fla. Stat. A key purpose of this authorization is ensuring the quasi-judicial compensation proceeding is fair.

Remember, "[a]n injured employee's right to receive workers' compensation benefits qualifies as [] a property interest" and entitles the employee to due-process protections—"procedural safeguards including notice and an opportunity to be heard." *Rucker v. City of Ocala*, 684 So. 2d 836, 840–41 (Fla. 1st DCA 1996).* It is true that due process "in the administrative setting does not always require application of the judicial model." *Dixon v. Love*, 431 U.S. 105, 115 (1977). "Thus the formalities requisite in judicial proceedings are not necessary in order to meet due process requirements in the administrative process." *Hadley v. Dep't of Admin.*, 411 So. 2d 184, 187 (Fla. 1982). "[D]ifferences in the origin and function of administrative agencies preclude wholesale transplantation of the rules of procedure, trial and review which have evolved from the history and experience of courts." *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (internal quotations omitted). At the same time, to meet minimal "due process standards," the proceeding must ensure "the opportunity to be heard [is]

---

* The insurance carrier, on the opposing side, has a competing property interest, entitling it to due process before that interest is adversely impacted by state action. *Cf. Moser v. Barron Chase Sec., Inc.*, 783 So. 2d 231, 236 n.5 (Fla. 2001); *Showntail the Legend, LLC v. Dep't of Bus. & Prof'l Reg.*, 302 So. 3d 1085, 1088 (Fla. 1st DCA 2020) (Tanenbaum, J., dissenting).

6

meaningful, full and fair, and not merely colorable or illusive." *Rucker*, 684 So. 2d at 841. The compensation judge has the authority under section 440.33, Florida Statutes, to make sure this happens.

It bears emphasizing that Christy Siena is the appellant (on behalf of her deceased husband); the law firm she hired to provide her legal representation is not. The question on appeal, then, is whether the compensation judge's disqualification of that firm will deprive *her* of the opportunity to have a "meaningful, full and fair" opportunity to be heard, through a lawyer of her choice, at the compensation proceeding—now that this court, in a separate case, has vacated and remanded. When considering the motion to disqualify, the compensation judge had to balance Siena's right to proceed with a law firm of her choosing against the carrier's competing right to a "fair" proceeding, which the carrier asserted (essentially) was being infringed by the identified conflict.

Through the evidentiary hearing held on the disqualification question, the compensation judge was able to assess, in significant detail, the extent to which the carrier's former lawyer in the case (now at the firm representing Siena on the other side) had access to confidential information. Even though the compensation judge framed his assessment using the Rules Regulating The Florida Bar, his decision was a proper exercise of discretion because it was based on the evidence he heard showing: either 1) a too-significant a risk of attorney-client-privileged information being disclosed; or (2) at least the carrier's undoubtedly dispiriting perception that Siena gained an unfair advantage because *its* lawyer in the case was now at the firm working the case for *her*. Siena did not put on any evidence demonstrating that she could not obtain a meaningful opportunity to be heard through any other law firm or lawyer, so there was nothing even to balance here.

Putting aside any strict application of the supreme court's professional code, the record easily supports a conclusion that no lawyer at Siena's chosen firm could appear in any future proceedings in the case—even with screening—without diminishing the fairness (perceived or otherwise) of those proceedings. *Cf. Bammac, Inc. v. Grady*, 500 So. 2d 274, 279 (Fla. 1st DCA 1986) (concluding that this court has the "duty to ensure

7

the integrity and fairness of workers' compensation proceedings, and just as importantly, to maintain the *appearance of fairness*" as part of its "review of orders entered in such proceedings"). For this reason alone, I agree the disqualification order should be affirmed.

_____

Kristine Callagy of Bichler & Longo, PLLC, Maitland, for Appellant.

Michael Broussard of Broussard, Cullen & Eldridge, P.A., Orlando, for Appellees.